# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 6:11-cr-401-RBD-DAB

FREDERICK MERVIN BARDELL

## ORDER TO SHOW CAUSE

This cause is before the Court *sua sponte*. The Government is ordered to show cause why the Bureau of Prisons ("BOP") should not be held in civil contempt or otherwise sanctioned for failing to comply with the Court's Order granting Defendant Frederick Mervin Bardell's release. (Doc. 92 ("Release Order").)

## BACKGROUND

On November 6, 2020, Mr. Bardell filed an Emergency Motion for Compassionate Release. (Doc. 77.) Mr. Bardell represented he was probably suffering from terminal colon cancer—a disease that responds well to treatment if given early enough. (*See id.* at 4; *see also* Doc. 77-1, ¶¶ 7, 9; Doc. 81-1.) Mr. Bardell's physician, Dr. Celio Burrowes, also opined "there has been an inordinate delay in undertaking medical treatment" for Mr. Bardell while in the custody of the BOP. (Doc. 81-1, ¶ 5.) The Government disagreed, responding "[t]here is no indication

-1-

yet that the defendant's condition (whatever it may be) is terminal," and assuring the Court that the BOP was "actively addressing the issues and there is no indication that he cannot receive adequate care in custody." (Doc. 80, pp. 1, 15.) So the Court denied Mr. Bardell's First Motion. (*See* Doc. 85.)

Three months later, Mr. Bardell again moved for compassionate release. (Doc. 86.) This time, Mr. Bardell attached an affidavit by Dr. Judy L. Schmidt, an oncologist, who opined Mr. Bardell needed "to be referred to a medical oncologist with [a] specialty in metastatic colorectal cancer ASAP" and that Mr. Bardell needed "immediate compassionate release from the prison to allow for life-saving emergency treatment at another higher level facility." (Doc. 86-1, ¶¶ 22, 24.) Dr. Schmidt concluded the "delay in treatment for this sigmoid colon cancer caused by the prison will, more likely than not, cost Mr. Bardell his life in a matter of weeks to months." (*Id.* ¶ 25.)

Again, the Government disagreed. (Doc. 88.) Again, the Government insisted Mr. Bardell's medical records showed the BOP "has been actively taking steps to address the defendant's medical concerns." (*Id.* at 3.) Again, the Government represented "there is no indication that he cannot receive adequate care in BOP's custody." (*Id.* at 4.) Again, the Government represented the BOP "is making substantial and ongoing efforts to meet the defendant's medical needs."

(*Id.*) And again, the Government maintained there was no definitive cancer diagnosis—"let alone a *terminal* cancer diagnosis." (*Id.* at 3–4.)

Two weeks after the Government's response was filed, Mr. Bardell died from cancer. (*See* Doc. 97.)

The events leading up to Mr. Bardell's death are the subject of this Order. On February 5, 2021, three days after Mr. Bardell filed his second motion for release, the Court granted the motion and ordered Mr. Bardell's counsel to work with the U.S. Probation Office "to create an approved plan of release as quickly as possible." (Doc. 92, p. 6 ("Release Order").) The Court also ordered the BOP to release Mr. Bardell "immediately *after* the United States Probation Office approves a release plan." (*Id.* (emphasis added).) But that is not what happened.

At first, things went according to plan. Mr. Bardell's parents immediately began arranging to transport Mr. Bardell from FCI Seagoville in Texas, where he was being held, via medical transport to Jacksonville, Florida, where he would be admitted to the emergency room. (Doc. 94, p. 1.)

Before these plans were finalized, however, the BOP released Mr. Bardell without notifying his counsel—and without the required approved plan of release in place. (*Id.* at 2; *see also* Doc. 95, p. 1.) Despite the clear instructions in the Court's Release Order, and the lack of a release plan, the BOP told Mr. Bardell's counsel

that "he was on his own." (Doc. 94, p. 2.)

Rather than the planned medical transport, the BOP drove Mr. Bardell out of Seagoville and dropped him on the curb outside the Dallas Fort Worth Airport, leaving his parents to purchase a commercial airline ticket for him. (*Id.* at 1.) Upon arriving in Jacksonville, Florida, he was so thin and visibly ill—including being soiled from blood and excrement from his condition—that his parents could not recognize him. (*Id.*; *see also* Doc. 94-1.) Mr. Bardell was immediately transported to a hospital emergency room, where he was admitted. (Doc. 94, p. 2.) There, he was diagnosed with Stage IV cancer which had metastasized to other organs. (*Id.* at 3.) His weight had dropped from 160 to 103 pounds (*id.* at 3), and he had a tumor on his liver that was so massive it significantly enlarged his upper abdomen and was visible on his thin frame. (Doc. 95, p. 2.) He had no control over his bowels and had difficulty walking. (*Id.*)

Nine days after release from BOP custody, on February 17, 2021, Mr. Bardell passed away. (Doc. 97.) According to his doctors, had Mr. Bardell been timely diagnosed and treated, he had had a 71% probability of survival. (Doc. 77-1, ¶ 9; Doc. 86-1, ¶ 14.)

## ANALYSIS

It is difficult to square the representations of the Government on the adequacy of the BOP's treatment of Mr. Bardell and the lack of a definitive

diagnosis with the actual condition of Mr. Bardell upon release. He was imminently dying from cancer—and he looked it. (*See* Docs. 94-1, 94-2, 95, 97.)

Given the disparity between the Government's representations and Mr. Bardell's condition, the Court will require the Government to produce complete medical and administrative records for Mr. Bardell in the BOP's possession, including all BOP records from Mr. Bardell's intake into BOP custody through his release and beyond. Personal identifying information specifically enumerated under Federal Rule of Criminal Procedure 49.1, such as Mr. Bardell's full date of birth and social security number, must be redacted. Further redactions are not permitted absent express Court Order, nor is the Court inclined to permit these records to be filed under seal.[1]

The BOP also failed to abide by the Court's Release Order. (Doc. 92.) Specifically, Mr. Bardell was released without the Court's required approved release plan. (*See* Doc. 95; *cf.* Doc. 92.) Soon after learning of the BOP's violation of the Release Order, the Court ordered the Warden of FCI Seagoville to submit a report detailing the circumstances of Mr. Bardell's release. (Doc. 96.)

Warden K. Zook submitted a letter apologizing to the Court and blaming

---

[1] In response to the first motion for compassionate release, the Court ordered the Government to file Mr. Bardell's administrative and medical records. (*See* Doc. 78.) Given the subsequent events, the Court requires these documents to be re-filed with the most up-to-date information.

the early release on unnamed "staff" and their supposed desire to take "swift action" to release Mr. Bardell. (*See* Doc. 98-1.) The Warden's assertion that inmate health and safety "is of paramount importance" to FCI Seagoville might be more credible if the BOP medical staff had ever diagnosed Mr. Bardell with cancer—a failure to diagnose Mr. Bardell for well over a year after his reported symptoms, despite his deteriorating condition, a visible tumor, and the loss of over a third of his body weight. (*See* Doc. 86-1, ¶ 14; Doc. 95, p. 2.) And the Warden's belated concern for the consequences of this "very regrettable situation" might ring more sincere if the Seagoville had not dropped a visibly dying man, who had no control of his bowels and had difficulty walking, on the curb outside of a commercial airport, leaving him "on his own," despite urgent efforts to arrange for medical transport to an appropriate medical facility and with no notice to his counsel, the U.S. Probation Office, or the Court. (Doc. 98-1, p. 2; Doc. 94.)

The stated desire to take "swift action" to release Mr. Bardell stands in stark contrast with the Undersigned's experience with the BOP. Nor does this purported desire, even if true, excuse the Government's, the BOP's, Warden Zook's, and his staff's failures to obey the lawful orders of this Court. So the Court will order the Government to show cause why the BOP should not be held in civil contempt or sanctioned for failing to comply with the Release Order (Doc. 92). *See United States*

*v. Claudio*, 499 F. App'x 865, 868 (11th Cir. 2012); *United States v. Straub*, 508 F.3d 1003, 1008–09 (11th Cir. 2007); *see also Hall v. Stone*, 170 F.3d 706 (7th Cir. 1999).

## CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. By **Tuesday, May 4, 2021**, the Government is **DIRECTED** to file the complete administrative record and all medical records in the BOP's possession as to Defendant Frederick Mervin Bardell, consistent with this Order.

2. By **Tuesday, May 4, 2021**, the Government is **ORDERED TO SHOW CAUSE** by written response why the Bureau of Prisons should not be held in civil contempt or otherwise sanctioned for failing to obey the Court's February 5, 2021 Order releasing Mr. Bardell. (Doc. 92.) **The Government's counsel is specifically** *cautioned to ensure that all representations to the Court based on information related by the BOP are truthful and accurate.*[2]

3. By **Friday, May 14, 2021**, Mr. Bardell's former counsel, Ms. Kimberly L. Copeland, Esq., may file a reply to the Government's response.

---

[2] *See United States v. Brown*, No. 3:06-cr-204-J-33MCR, 2006 WL 3313924, at *2 (M.D. Fla. Nov. 13, 2006).

4. Upon receipt of the Government's response, the Court will assess the need for appointment of independent counsel to serve as amicus curiae on the development of a record and the question of sanctions.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 13, 2021.

ROY B. DALTON JR.
United States District Judge

Copies to:
Kenneth Hyle, Bureau of Prisons' General Counsel
K. Zook, Warden of FCI Seagoville
Attorney Kimberly L. Copeland